UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00598-GNS-CHL

GAIL MARIE PHOENIX                                                                   PLAINTIFF

v.

DR. MARK T. ESPER,
Secretary of the Army                                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 33), Plaintiff's Motion for Default Judgment (DN 56), and Defendant's Partial Motion to Dismiss (DN 54). The motions are ripe for adjudication. For the reasons that follow, Plaintiff's motions are **DENIED** and Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND

Plaintiff Gail Marie Phoenix ("Phoenix") was employed by the Department of the Army during the time period relevant to this lawsuit. On August 2, 2016, she contacted an Equal Employment Opportunity counselor ("EEO counselor") regarding alleged discriminatory actions by her employer, and on August 31, 2016, she filed the Formal Complaint of Discrimination (DA Form 2590) ("Formal Complaint"). (Compl. Ex. 2, at 2, DN 1-2). On July 7, 2017, the Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue letter to Phoenix. (Compl. Ex. 1, DN 1-1).

Phoenix filed this action *pro se*, alleging discrimination and retaliation against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and 42 U.S.C. § 1983. (Compl. 4, 5, 12).

1

## II. JURISDICTION

To the extent this Court possesses jurisdiction over Phoenix's claim, it is based on federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying the evidence demonstrating an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the nonmoving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable for the nonmoving party, the nonmoving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the nonmoving party must present facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

Because Phoenix presents no direct evidence of retaliation, the burden shifting framework articulated in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), applies. *See Scott v. Donahoe*, 913 F. Supp. 2d 355, 364 (W.D. Ky. 2012) (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 402 (6th Cir. 2009)). To prove a prima facie claim of retaliation under Title VII, Phoenix must prove that: "(1) [s]he engaged in activity protected by Title VII; (2) the exercise of h[er] civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citation omitted). "The burden of establishing a prima facie case is not an onerous one." *Lewis-Smith v. W. Ky. Univ.*, 85 F. Supp. 3d 885, 906 (W.D. Ky. 2015) (citing *Nguyen*, 229 F.3d at 563).

If Phoenix is able to make out a prima facie case, the burden shifts to her employer to proffer a legitimate nonretaliatory reason for its decision. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 772 (6th Cir. 2018) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009)). If her employer does so, "the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (citation omitted).

Phoenix points to five categories of "adverse acts" on the part of her employer that purportedly give rise to her retaliation claims: (1) the nonapproval of her time card; (2) delay in her request for a work accommodation and the purported disclosure of her medical condition; (3) job application rejections; (4) a low performance evaluation; and (5) the questioning of her security clearance.

First, Phoenix alleges that the nonapproval of her time card for the period between December 11, 2016, and December 24, 2016 was an adverse retaliatory act. Esper, however, has proffered a declaration from Jeffrey Bryson, the individual responsible for approving her time

card, to the effect that Phoenix's time card was not approved for two reasons: (1) she did not submit her time card by the prescribed deadline; and (2) she reported inaccurate hours. (Bryson Decl. ¶¶ 17-18, DN 41-1). The evidence of record Phoenix cites to does not dispel Bryson's first assertion; the time card in no way indicates that Phoenix submitted it within the prescribed time period. (Pl.'s Mot. Summ. J. Ex. 1, DN 33-1). Moreover, Phoenix failed to respond to Bryson's second assertion, i.e. that she reported inaccurate hours. Whether the nonapproval of Phoenix's time card was an impermissible retaliatory act or a legitimate nonretaliatory act remains a genuine issue of material fact precluding summary judgment in favor of Phoenix on this basis.

Second, Phoenix alleges that the delay in her request for a work accommodation and the purported disclosure of one of her medical conditions were adverse retaliatory acts. In response to these allegations, Esper has proffered a declaration from the individual who handled Phoenix's work accommodation request, Anthony Clark ("Clark"). In late November 2016, Phoenix asked Clark if she could telework. (Clark Decl. ¶ 3, DN 41-2). Clark had been hired earlier that month, and it was the first time he had ever processed a request for an accommodation. (Clark Decl. ¶¶ 2, 4). Certain steps were required of both Phoenix and Clark, including proper documentation and processing. (Clark Decl. ¶ 4). The "Supervisor Telework Checklist" describes nine different tasks that had to be completed before Phoenix received her accommodation and the dates of completion for those tasks. (Def.'s Resp. Pl.'s Mot. Summ. J. Ex. 3, DN 41-3). Phoenix did not complete her tasks until November 30. Clark completed his tasks on December 14. "G1", the ultimate approver of Phoenix's request, received the checklist on December 21. The Telework Committee, the group that handles telework requests, met on January 4, 2017 to evaluate Phoenix's request. (Pl.'s Mot. Summ. J. Ex. 7, at 3, DN 33-7). Phoenix's request was approved on January 13, 2017. (Def.'s Resp. Pl.'s Mot. Summ. J. Ex. 4, ¶ 7, DN 41-4).

Whether this delay constitutes a retaliatory act is a genuine issue of material fact precluding summary judgment in favor of Phoenix on this claim. Although Phoenix asserts that Esper failed to abide by policies and guidelines governing the time period for processing an accommodation request, that in and of itself is a debatable assertion. The only prescribed time period Phoenix points to comes from "The Fort Knox, Reasonable Accommodation Packet",[1] which purportedly states: "[T]he staff member who receives the request must determine who will be responsible for handling it. If it is another staff member, he/she will forward it to the appropriate official within 3 business days of receipt of the request." (Pl.'s Mot. Summ. J. 10, DN 33). A reasonable interpretation of that mandate is that the three-day deadline kicks in only if the staff member handling the request realizes that he or she is not the correct staff member to handle that request. Phoenix makes no assertion that Clark was the wrong staff member to handle her request, so it has not been established that the deadline Phoenix cites applies to her request.

Moreover, the failure to abide by the deadlines prescribed by those policies and guidelines does not automatically mean that any departure from those deadlines constitutes a retaliatory act. For example, Phoenix has not refuted the fact that the delay could have been attributed to Clark having only recently started in his position that same month or because her request coincided with the holiday season, reasons having nothing to do with her race or sex. Finally, on the "Confirmation of Request for Reasonable Accommodation" form that Phoenix filled out herself, she responded "No" to the question, "Is your accommodation request time sensitive?" (Def.'s Resp. Pl.'s Mot. Summ. J. Ex. 5, ¶ 2, DN 41-5). In other words, Phoenix herself asserted that her accommodation request did not require immediate attention.

---

[1] It appears this packet was not made part of the record.

Once Phoenix's request had been processed, she claims that she received "unnecessary" requests for paperwork, specifically, information about her medical conditions. Phoenix's conclusory assertion is insufficient to award her summary judgment. Whether the requested information was the basis of a retaliatory act or a legitimate nonretaliatory inquiry to verify the legitimacy, necessity, and feasibility of her telework extension request is a genuine issue of material fact precluding the grant of summary judgment in favor of Phoenix. This is especially true when the record reveals that the basis for her employer's inquiry was that Phoenix's "performance has diminished since telework began. Specifically, there have been problems brought to Management's attention via written complaints concerning customer interactions that occurred while [Phoenix was] conducting official business during [her] telework duty day." (Pl.'s Mot. Summ. J. Ex. 11, DN 33-11). Phoenix is not entitled to summary judgment on this basis.

Phoenix also alleges that her employer unnecessarily delayed responding to her request for a reasonable accommodation extension. For the reasons articulated above, however, whether this delay constitutes a retaliatory act or a nonretaliatory part of the accommodation request process is a genuine issue of material fact precluding the grant of summary judgment in favor of Phoenix. As before, Phoenix points to nothing suggesting that the delay in the eventual approval of her telework extension request implies a deviation from the normal process of approving such a request.

As for the second alleged retaliatory act, whether Phoenix's fellow employees actually improperly revealed her medical condition is also a genuine issue of material fact precluding the grant of summary judgment in her favor. The same three individuals, Nikki Quijano, Brittany Wisniewski, and Celena Coleman, who Phoenix alleges improvidently discussed her medical condition have submitted declarations refuting that claim. (Quijano Decl. ¶¶ 7, 9, DN 41-6;

Wisniewski Decl. ¶ 5, DN 41-8; Coleman Decl. ¶ 6, DN 41-7). Summary judgment cannot be granted in favor of Phoenix based on these disputed facts.

Third, Phoenix claims that "she applied for over 28 positions that she was qualified, certified, and referred for and denied advancement." (Pl.'s Mot. Summ. J. 13, DN 33). Although Phoenix applied for 28 positions, only two of those applications came after she engaged in her first Title VII protected action, i.e., contacting the EEO counselor on August 2. (Pl.'s Mot. Summ. J. Ex. 15, DN 33-15). The only specific application she mentions in any detail is an application she filed on September 8, 2016. (Pl.'s Mot. Summ. J. 13). In support of her claim, Phoenix points to: (1) the sheer number of applications she filed; (2) testimony from an individual acknowledging that "sex may have been a factor in [Phoenix's] nonselection because the other candidates were male"; (3) testimony from two other employees claiming they have been treated unfairly; (4) testimony from an individual interviewing for a similar position that the individual was not asked certain questions that Phoenix was asked; and (5) that an individual who was the subject of previously-filed complaints by Phoenix sat on the hiring panels overseeing Phoenix's application. (Pl.'s Mot. Summ J. 13). Phoenix, however, has presented no evidence refuting the nonretaliatory reasons for the rejection of her application. For example, Phoenix has presented no evidence dispelling the contention that she may not have been hired because individuals more qualified than her obtained those positions, a legitimate reason for rejection. Granting summary judgment in favor of Phoenix on this basis would require making numerous assumptions and inferences about genuine issues of material fact about the potential legitimacy of her job application denial.

Fourth, Phoenix claims that the lowering of her performance evaluation constitutes an impermissible retaliatory act. Phoenix's claim in this regard stems from a performance evaluation conducted on December 11, 2017, in which her employer stated, "data provided by your supervisor

(Mr. Clark) indicates that your performance has diminished since telework began." (Def.'s Resp. Pl.'s Mot. Summ. J. Ex 11, ¶ 2, DN 41-11). Phoenix additionally takes issue with a customer complaint attached to that report supporting that assertion, claiming that her employer fraudulently sought customer complaints "as a pretextual reason to lower Phoenix's performance evaluation[.]" (Pl.'s Mem. Mot. Summ. J. 15,). In response to Phoenix's summary judgment motion, however, Esper requests dismissal of this claim for failure to exhaust administrative remedies because Phoenix never brought this claim before the EEOC. (Def.'s Resp. Pl.'s Mot. Summ. J. 12-13, DN 41). Esper is correct in his assertion, as addressed in the next section.

Fifth and finally, Phoenix claims that the "questioning" of her security clearance constitutes an impermissible retaliatory act. As explained below, however, Esper correctly notes that this claim should be dismissed for lack of jurisdiction over such a claim.

As Phoenix has failed to meet her burden of proof on any of her claims, the Court will deny her summary judgment motion.

  **B.**  <u>**Defendant's Partial Motion to Dismiss**</u>

The standards for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) differ in the Sixth Circuit. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should generally be decided before any ruling on the merits under Fed. R. Civ. P. 12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946). In most circumstances, a plaintiff bears the burden to survive Fed. R. Civ. P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. *Id*. But challenges to subject matter jurisdiction come in several varieties. Facial attacks challenge a plaintiff's establishment of jurisdiction in her complaint and require the court to examine the jurisdictional basis. Factual attacks contest the existence of factual prerequisites to jurisdiction. In such motions, in contrast

to motions under Fed. R. Civ. P. 12(b)(6), the district court is empowered to resolve the factual disputes affecting any jurisdictional prerequisites. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A plaintiff bears the burden in both these situations. *Bell*, 327 U.S. at 682.

A party may also move for dismissal under Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted. Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusion or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claims

made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

Esper moves to dismiss Phoenix's discrimination and retaliation claims based on her job application rejections. This Court has already dealt with this issue. In a prior order, the Court dismissed all of Phoenix's claims based on acts occurring prior to June 18, 2016, for failure to exhaust administrative remedies. (Order 5-6, DN 20). Phoenix has since amended her complaint to allege multiple allegations that her employer illegally rejected her job applications before that June 18, 2016, date. (Am. Compl. 4-6, DN 52). Finding no reason to allow those previously-dismissed claims to proceed, to the extent Phoenix has attempted to reallege claims already dismissed, i.e., claims based on job rejections occurring before June 18, 2016, those claims have been dismissed without prejudice. (Order 5-6, DN 20).

Phoenix additionally proffers four other instances of illegal job rejection: from two jobs Phoenix applied for on July 22, 2016;[2] from one she applied for on August 15, 2016; and from one she applied for on September 8, 2016. (Am. Compl. 4-6; Pl.'s Mot. Summ. J. Ex. 15). Although Phoenix characterizes her claims based on her rejection from the jobs she applied for on July 22, 2016, as "retaliation" claims, they are actually "discrimination" claims because she had not engaged in any Title VII protected activity at that time—she did not meet with her EEO counselor until August 2, 2016. (Compl. Ex. 2, at 2, DN 1-1). This Court has already determined that Phoenix complied with the administrative exhaustion requirement with regard to any discriminatory act occurring June 18, 2016, or later. (Order 6, DN 20). Additionally, this Court

---

[2] The record indicates that Phoenix applied for two different jobs on this date. Although both positions have the same title, the job numbers and grades are different, which suggest that these are not the same position. (Pl.'s Mot. Summ. J. Ex. 15).

10

has already determined that application of the expected scope of investigation test saves Phoenix's retaliation claims arising after the filing of the Formal Complaint on August 31, 2016. (Order 8, DN 20). The combination of these two rules saves Phoenix's job rejection claims stemming from the dates of July 22, August 15,[3] and September 8.

Esper also requests dismissal of Phoenix's retaliation claim based on the lowering of her job performance evaluation. Because Phoenix never brought this claim before the EEOC, Esper argues Phoenix failed to exhaust her administrative remedies for this claim. (Def.'s Resp. Pl.'s Mot. Summ. J. 12-13, DN 41); *see George v. Youngstown State Univ.*, No. 4:17-CV-2322, 2019 WL 118601, at *6 (N.D. Ohio Jan. 7, 2019) ("Before bringing suit under Title VII[,] . . . a plaintiff must first exhaust h[er] administrative remedies by filing a timely discrimination charge with the EEOC." (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001))). Esper is correct in his assertion:

> [A] Plaintiff must exhaust h[er] administrative remedies for retaliation claims occurring *after* the issuance of the EEOC's right to sue notice. Several district courts within the Sixth Circuit have refused to allow plaintiffs to pursue claims for allegedly adverse actions occurring only after the EEOC had already completed its investigation. "[T]hose courts have reached this conclusion on the basis of an argument that . . . any later-in-time claims could not have fallen within the scope of a reasonable investigation by the EEOC into a claimant's original charges, and thus were not reasonably related in a way that should excuse exhaustion." In other words, it is impossible for a claim accruing after the close of the EEOC investigation to fall within the scope of investigation. Moreover, the courts have

---

[3] The job application rejection from August 15 can be viewed either as a purported act of discrimination, like the July 22 acts, or a purported act of retaliation, as Phoenix made contact with her EEO counselor on August 2. Either way, this claim survives through application of the expected scope of investigation test. "[*P*]*ro se* complaints are construed liberally[] so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)). Phoenix alleged discriminatory and retaliatory job application practices in her Formal Complaint, and her August 15 job application discriminatory or retaliatory rejection claim is reasonably related to these allegations. (Compl. Ex. 2, at 1, DN 1-2).

> "an interest in protecting the administrative procedures of the EEOC so that Plaintiffs cannot bring countless Title VII charges in federal court."

*George*, 2019 WL 118601, at *6 (emphasis in original) (internal quotations omitted) (internal citations omitted).

In this instance, the EEOC issued a right-to-sue letter to Phoenix on July 7, 2017, five months before the alleged impermissible lowering of Phoenix's performance evaluation on December 11, 2017. (Compl. Ex. 1, DN 1-1). Failure to exhaust administrative remedies before filing a Title VII claim in court is grounds for dismissal. *Locket v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008). Accordingly, the Court will dismiss Phoenix's retaliation claim without prejudice.

Finally, Esper moves to dismiss Phoenix's retaliation claim based on the "questioning" of her security clearance. Esper is correct that "[t]o the extent [Phoenix's] Title VII claims contest the merits of [a] security-clearance investigation and suspension, the Court is without jurisdiction to hear the dispute." *Kuklinski v. Lew*, No. 3:14-CV-00843-CRS, 2015 WL 5005805, at *3 (W.D. Ky. Aug. 21, 2015); *see also Tenenbaum v. Caldera*, 45 F. App'x 416, 417-18 (6th Cir. 2002) ("Because Title VII would require a court to weigh the validity of the executive's proffered reasons for revoking a security clearance, . . . security clearance decisions are not justiciable under Title VII." (citations omitted)). Thus, the Court will dismiss, without prejudice, Phoenix's retaliation claim relating to the questioning of her security clearance.

### C. **Plaintiff's Motion for Default Judgment**

In addition to moving for summary judgment, Phoenix moves for default judgment based on what she characterizes as Esper's failure to answer her amended complaint. Phoenix served her amended complaint on August 23, 2019. (Am. Compl., DN 53). On September 6, 2019—within the time period permitted by Fed. R. Civ. P. 12—Esper moved to dismiss some of Phoenix's claims. *See* Fed. R. Civ. P. 15(a)(3); (Def.'s Partial Mot. Dismiss, DN 54). Phoenix argues she

12

should be awarded default judgment on the claims that Esper did not respond to. *See Gerlach v. Mich. Bell Tel. Co.*, 448 F. Supp. 1168, 1174-75 (E.D. Mich. 1978) (articulating that default judgment may be appropriate against party on claims that party did not respond to in that party's partial motion to dismiss).

"[T]he majority of federal courts . . . have held that filing a partial motion to dismiss does indeed extend the time to file a responsive pleading with respect to all claims, including those not addressed in the motion. *Compton v. City of Harrodsburg*, 287 F.R.D. 401, 402 (E.D. Ky. 2012) (citing 5B Arthur R. Miller et al., *Federal Practice & Procedure* § 1346 (3d ed.)). The opinion that Phoenix relies on in support of her argument, "the *Gerlach* opinion, which notably did not cite any authority for its ruling, stands alone like an Appaloosa in a herd of Thoroughbreds . . . ." *Id*. Not only is the *Gerlach* opinion an outlier, "the *Gerlach* court did not strictly adhere to its own ruling in the opinion, as the court declined to enter default judgment against the defendant on the claims that were not at issue in the motion to dismiss and, instead, allowed the defendant an extra ten days from the date of the opinion to file an answer." *Id*. (citing *Gerlach*, 448 F. Supp. at 1175). Instead of granting default judgment in favor of Phoenix on her claims that Esper did not respond to in his partial motion for summary judgment, *Compton* indicates that courts should "[i]nterpret[] Rule 12(a)(4) to allow a party to postpone filing a complete responsive pleading until fourteen days after the court rules on a partial motion to dismiss . . . ." *Compton*, 287 F.R.D. at 402.

Additionally, "courts have held that a federal defendant's failure to serve a timely answer to a complaint is not a sufficient ground for entry of default against the Government." *Bohmier v. United States*, No. 5:14-226-KKC, 2015 WL 4756546, at *2 (E.D. Ky. Aug. 10, 2015) (citing *George v. Internal Revenue Serv.*, 344 F. App'x 309, 311 (9th Cir. 2009); *Greenebaum v. United States*, 360 F. Supp. 784, 789 (E.D. Pa. 1973)). Not only that, but "[e]ntry of default against the

13

federal government and its officers is particularly disfavored, and it may only occur if the plaintiff substantiates his claim for relief with acceptable evidence." *Spotts v. Hock*, No. 10-353-GFVT, 2011 WL 5024437, at *1 (E.D. Ky. Oct. 19, 2011) (citing Fed. R. Civ. P. 55(d); *Arevalo v. United States*, No. 05-110, 2008 WL 3874795, at *6 (E.D. Pa. Aug. 20, 2008) (courts may not enter default judgment against government merely for failure to file a timely response)). For the reasons articulated above supporting the denial of Phoenix's motion for summary judgment, Phoenix has failed to substantiate her claim for relief to justify the grant of a default judgment in her favor, and the Court will deny this motion.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (DN 33) and Plaintiff's Motion for Default Judgment (DN 56) are **DENIED**.

2. Defendant's Partial Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. All of Phoenix's claims based on acts occurring prior to June 18, 2016; her retaliation claim based on the lowering of her performance evaluation on December 11, 2017; and her retaliation claim based on the questioning of her security clearance are **DISMISSED WITHOUT PREJUDICE**. All other claims remain pending.

Greg N. Stivers, Chief Judge
United States District Court

November 14, 2019

cc: counsel of record
Gail Marie Phoenix, *pro se*

14