UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GAIL MAIRE PHOENIX                                                    Plaintiff

v.                                         Civil Action No. 3:17-CV-00598-RGJ-CHL

DR. MARK T. ESPER,                                                   Defendant
Secretary of the Army

* * * * *

## MEMORANDUM OPINION AND ORDER

Defendant Dr. Mark T. Esper, Secretary of the Army ("Defendant") moves for Summary Judgment [DE 91]. Plaintiff Gail Phoenix ("Phoenix") responded [DE 94], and Defendant Replied [DE 95]. Phoenix moves for a hearing [DE 112], and Defendant opposes. [DE 113]. This matter is ripe. For the reasons below, the Court **GRANTS** Defendant's Motion for Summary Judgment [DE 91] and **DENIES** Phoenix's Motion to Set a Hearing Date [DE 112].

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Gail Marie Phoenix ("Phoenix") was employed by the Department of the Army during the relevant period. [DE 1 at 2-5]. On August 2, 2016, she contacted an Equal Employment Opportunity counselor ("EEO counselor") alleging discriminatory actions by her employer, and approximately thirty days later, filed the Formal Complaint of Discrimination (DA Form 2590) ("Formal Complaint"). [DE 1-2 at 19].

After she filed the Formal Complaint, Phoenix applied for two positions with the Department of the Army, one in September 2016 and one in December 2016. [DE 91 at 1162; DE 91-15 at 1358-60]. She was not selected for either position. *Id.*

On November 30, 2016, Phoenix filed a written request for accommodations from her supervisor Anthony Clark ("Clark"). [DE 91 at 1167; DE 91-1 at 1204; DE 94 at 1382; DE 94-6].

1

Phoenix requested to telework. [DE 91-1 at 1205; DE 94 at 1382-83]. She alleges that her coworkers saw and discussed her accommodations request among themselves. [DE 94 at 1387]. The request was approved and Phoenix began teleworking in January 2017. [DE 91-1 at 1205; DE 94 at 1370-71].

Jeff Bryson ("Bryson") was the supervisor responsible for certifying Phoenix's timecard for the pay period from December 11-24, 2016 (hereinafter "timecard").[1] [DE 91 at 1162; DE 94 at 1370-71. Bryson did not certify this timecard and her paycheck was resultingly delayed. [DE 91 at 1162; DE 94 at 1370-71, 1375].

On July 7, 2017, the Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue letter to Phoenix. [DE 1 at 6; DE 1-1]. In September 2017 Phoenix sued *pro se*, alleging discrimination and retaliation against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17, and 42 U.S.C. § 1983. [DE 1].

The Court has previously dismissed all Defendants except Dr. Mark T. Esper, Secretary of the Army, and all claims except Phoenix's retaliation claim. [DE 20 at 228]. Phoenix moved for default judgment, amended her Complaint, moved twice for summary judgment, and the Court denied the default judgment and summary judgments. [DE 33; DE 52; DE 56; DE 60; DE 70; DE 86]. There remains three "adverse acts" on the part of her employer that purportedly give rise to her retaliation claims: (1) the non-approval of her timecard; (2) delay in her request for a work accommodation and the purported disclosure of her medical condition; and (3) job application

---

[1] The parties appear to interchangeably use the terms "certify" and "approve," in reference to Bryson's actions with Phoenix's timecard. [*See* DE 91at 1162 ("Bryson, the individual responsible for certifying Phoenix's time as accurate"); *Id.* at 1168 ("Bryson was unaware of Phoenix's EEO activity at the time he made the decision to not approve her time card."); DE 94 at 1371 ("Bryson was aware and knew about Phoenix [sic] Complaint when he made the decision to not approve her timecard"); *Id.* at 1379 ("Phoenix claims, "but for" Bryson not certifying her timecard, she would have been paid").

rejections.  [DE 60 at 680-85, 691].  Defendant now moves for summary judgment on each of these remaining claims.  [DE 91].

## II.    STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the moving party shows that there is no genuine issue of material fact about an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  The Court is not required or permitted, however, to judge the evidence or make findings of fact.  *Id.* at 1435-36.  The moving party has the burden of proving that no genuine issue of material fact exists.  *Id.* at 1435.  A fact is "material" if proof of that fact could establish or refute an essential element of the cause of action or a defense advanced by the parties.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate.  *Id.*

Once the moving party carries the initial burden of proving that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to

prove that there is a genuine issue for trial.  *Id.* at 256.  To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  The Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249– 50 (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

"*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 519 (1972).  Yet "the lenient treatment generally accorded to *pro se* litigants has limits."  *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.  "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law,  and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage."  *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).   The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").  However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit

statements for purposes of summary judgment.  *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## III.   DISCUSSION

Defendant moves for summary judgment on Phoenix's remaining retaliation claims, arguing that she has not met her prima facie case for retaliation under Title VII.  [DE 91 at 1163-90].  Phoenix argues that there are genuine disputes of material fact.  [DE 94 at 1370-91].

Because Phoenix presents no direct evidence of retaliation, the burden shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), applies.  *See Scott v. Donahoe*, 913 F. Supp. 2d 355, 364 (W.D. Ky. 2012) (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 402 (6th Cir. 2009)).  To prove a prima facie claim of retaliation under Title VII, Phoenix must prove that: "(1) [s]he engaged in activity protected by Title VII; (2) the exercise of h[er] civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action."[2]  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citation omitted).

To establish a causal connection, the plaintiff must offer sufficient evidence that her protected activity was the likely reason for the adverse action.  *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).  In other words, a plaintiff must adduce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not

---

[2] The Court notes Phoenix's argument that "the Court has ruled on most of the issues . . . stating that Phoenix has satisfied most elements to establish retaliation, except having and proving [her employer's knowledge] of her protected activity."  [DE 94 at 1377].  Phoenix cites the Court's Order on Motion to Dismiss, in which the Court stated that "Phoenix has clearly articulated facts to support at least three of the four elements.  The only element that is arguably missing is whether her employer had knowledge of her protected activity."  [DE 20 at 227].  The Court then held Phoenix to a less stringent standard as a pro se litigant and concluded that Phoenix had sufficiently stated a retaliation claim, but the Court did not consider the merits of that claim.  [*Id.* at 228].  Thus, the Court in that Order was not concluding that Phoenix satisfied any of the elements, but only that Phoenix sufficiently stated the claim in her Complaint.

engaged in protected activity. *Nguyen*, 229 F.3d at 563. A causal link can be shown "through knowledge coupled with a closeness in time that creates an inference of causation . . . [h]owever, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Id.* at 566 (internal quotations omitted). This burden is minimal, and only requires that plaintiff put forth some credible evidence that enables the Court to deduce some causal connection between the protected activity and retaliatory action. *Dixon* at 333. "The burden of establishing a prima facie case is not an onerous one." *Lewis-Smith v. W. Kentucky Univ.*, 85 F. Supp. 3d 885, 906 (W.D. Ky. 2015), *aff'd* (Jan. 12, 2016) (citing *Nguyen*, 229 F.3d at 563).

If Phoenix can make out a prima facie case, the burden shifts to her employer to proffer a legitimate nonretaliatory reason for its decision. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 772 (6th Cir. 2018) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009)). Defendant's burden, at that stage of the process, is one of production, not persuasion, and no credibility assessment is to be made. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012).

If her employer meets this burden, "the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (citation omitted). Plaintiff can meet this burden by showing that: (1) Defendant's stated reason is baseless, (2) the reason offered was not the actual reason for the adverse action, or (3) the reason offered was insufficient to explain Defendant's action. *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008) (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

For each of the potential adverse actions giving rise to Phoenix's remaining retaliation claims, the parties agree that Phoenix engaged in a protected activity by contacting the EEO

Counselor and filing a Complaint.  They dispute the other elements in varying measure depending on the alleged adverse act, so the Court will consider each of these acts separately.

    A.  <u>The Non-approval of Her Timecard</u>

        *a.  Prima Facie Case*

As the Court discussed in its earlier order, Phoenix alleges that the nonapproval of her timecard was an adverse retaliatory act.  [DE 52-1 at 583; DE 60 at 681].  Defendant argues that Phoenix cannot establish the causation element of the prima facie test.  [DE 91 at 1167-73].

Defendant argues that Phoenix cannot prove the causal connection element because Bryson was not involved in the EEO activity or the claims in the Formal Complaint and was unaware of Phoenix's protected activity when he did not approve her timecard.  [*Id.* at 1168-70].  Phoenix argues that the Court should still draw an inference of causation because "she has had confrontations with Bryson in the past prior to the filing of her EEO Complaint on August 31, 2016, which mentions Bryson specifically."  [DE 94 at 1375].  She argues that "Bryson's position as chief, deputy chief in the same division as well as being mentioned in the Complaint of Discrimination and Amended Complaints [to this lawsuit] makes it next to impossible for Bryson to 'not know' about Phoenix's EEO complaint."  [*Id.* at 1379-80 (internal citations omitted)].  Both parties point to Phoenix's Formal Complaint, which does not name Bryson as one of the parties that discriminated against her but does state that Bryson yelled at her.  [DE 1-2 at 18-24].  Defendant also points to Bryson's sworn Declaration, in which he states, "[d]uring December of 2016, I was unaware that Ms. Phoenix filed an EEO complaint."  [DE 91-2 at 1226].  Phoenix does not offer any evidence to show that Bryson was aware of her EEO activity, but argues that an inference of knowledge should be drawn based on Bryson's position and the fact that she "mentioned [him] in the Complaint of Discrimination."  [DE 94 at 1380].  And Phoenix argues

that "the type of adverse action (pay withholding) during the Christmas season give[s] high inference to the causation." [*Id.* at 1375]. Phoenix does not accompany her brief with a sworn affidavit or any other evidence supporting a causal connection. *Viergutz*, 375 F. App'x at 485 (when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion.")

The Court should liberally construe the plaintiff's complaint, consider whether those allegations are facially sufficient to establish a "causal connection," and "look only to the plaintiff's evidence to determine whether or not the plaintiff has established a prima facie case of retaliation." *Ballanger v. Bunge Foods*, 238 F.3d 419 (6th Cir. 2000); *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 664 (6th Cir. 2000). Even considering this, and that "[t]he burden of establishing a prima facie case is not an onerous one," the Court finds that there is insufficient evidence to allow for an inference of a causal connection between Phoenix filing her Formal Complaint and the non-approval of her timecard. *See Garrett v. Brennan*, No. 5:18-CV-221-JMH-EBA, 2021 WL 1554893, at *7 (E.D. Ky. Apr. 20, 2021) (plaintiff "did not provide any evidence that the disciplinary action she received was motivated by retaliatory intent, or that her supervisors knew of the prior EEO activity and thus her prima facie case of retaliation fails."). *Lewis-Smith*, 85 F. Supp. 3d at 906. Thus, Phoenix' prima facie case of retaliation fails. But even if there were sufficient evidence to allow for inference of a causal connection, Defendant has suggested a legitimate reason for its actions, and the Court will continue with the next step in the burden-shifting analysis.

### b. *Legitimate, Nondiscriminatory Reason*

After the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate and non-retaliatory reason for its decision. *Rogers*, 897 F.3d at 772.

Defendant argues, as it did in response to Phoenix's motions for summary judgment, that Bryson did not certify her timecard first because Phoenix did not submit or "concur" her hours by the deadline and then upon review because the hours were inaccurate. [DE 91 at 1167-68]. Defendant submits Bryson's sworn Declaration in support of this argument, in which Bryson states:

> Phoenix did not concur her time for this pay period by the prescribed deadline . . . Phoenix had inaccurate hours indicated as 'worked' on her time card, [so Bryson] did not certify her time because of the inaccurate hours [and if she] had the correct hours reported and timely concurred [he] would have certified the time.

[DE 91-2 at 1226].

Defendant has thus articulated a legitimate nondiscriminatory reason for withholding Phoenix's pay and refuted her prima facie case of retaliation. As the Court explained in its Orders on Summary Judgment, Defendant has met his burden at this step.

### c. *Pretext*

As Defendant has provided a non-retaliatory reason, "the plaintiff must [now] prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Rogers*, 897 F.3d at 772.

Although Phoenix does not specifically address pretext, the Court liberally interprets her arguments as she is a *pro se* Plaintiff. *Haines*, 404 U.S. 519. Phoenix argues that Defendant's explanation is not legitimate because concurred her timecard by the deadline with accurate hours, because she should have been paid regardless of the accuracy of her timecard, and that "she has

had confrontations with Bryson in the past prior to the filing of her EEO Complaint." [DE 94 at 1375-81].

To establish Defendant's stated reason amounts to pretext, Phoenix must show that the proffered reason (1) had no basis in fact; (2) did not motivate the adverse employment action; or (3) could not motivate that action. *Manzer*, 29 F.3d at 1084. Ultimately, to carry her burden in opposing summary judgment, Phoenix must produce sufficient evidence from which a factfinder could reasonably reject Defendant's explanation of why Bryson did not certify her timecard. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "This burden is not heavy, though, summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual." *Strickland v. City of Detroit*, 995 F.3d 495, 513 (6th Cir. 2021).

Phoenix argues that she should have been paid regardless of the hours she submitted because she is an "exempt" worker under the Fair Labor Standards Act ("FLSA"), and it is the employer's responsibility to maintain records of hours worked rather than the employee's. [DE 94 at 1377-80]. She argues in essence that Defendant's reasons must be pretextual, because under FLSA her failure to submit proper hours by a deadline could not motivate failure to pay. [*Id.*]. Defendant does not respond to Phoenix's FLSA arguments.[3] Phoenix also argues that the stated reasons must be pretextual because she had concurred accurate hours on her timecard by the deadline. [*Id.* at 1371]. In support of this argument, Phoenix submits a copy of her timecard, which has no date and states, "concur: yes." [*Id.*; DE 94-2 at 1402]. She also points to Bryson's Declaration, stating he personally knew her hours were inaccurate, and argues that if Bryson knew the times she did not work, he had no reason not to submit her timecard. [DE 91-4; DE 94 at 1378].

---

[3] While the parties did not adequately brief the FLSA issue, Defendant does not appear to dispute that Phoenix was an exempt worker.

But again, Phoenix fails to accompany her argument with sworn affidavits or any other evidence that actually suggests that Defendant's reasons were pretextual, as is her burden at this stage. *Viergutz*, 375 F. App'x at 485; *Choulagh v. Holder*, 528 F. App'x 432, 439 (6th Cir. 2013) (affirming summary judgment where "[p]laintiff has no evidence that these reasons are pretextual"). Phoenix's retaliation claim for the nonapproval of her timecard thus fails and the Court therefore **GRANTS** Defendant's Motion for Summary Judgment [DE 91] on this claim.

B. Delay in Work Accommodation Request and Disclosure of Medical Condition

a. *Prima Facie Case*

As explained in the Court's previous order, Phoenix alleges that the purported delay in her request for a work accommodation and disclosure of one of her medical conditions were adverse retaliatory acts. [DE 60 at 680-85, 691]. Defendant argues that Phoenix cannot prove a prima facie case because these were not adverse actions and because she cannot establish a causal connection. [DE 91 at 1173-83].

The Court first addresses the alleged delay in Phoenix's work accommodations. Phoenix states, and Defendant agrees, that she requested disability accommodations of 100% telework on November 30, 2016, with a telework start date of December 12, 2016. [*Id.* at 1161-62; DE 94 at 1382; DE 94-6]. Her telework was approved January 13, 2017. [DE 91-6 at 1248; DE 94 at 1383]. She argues her accommodation request took forty-four days, which Clark delayed by leaving it on his desk for two weeks. [DE 94 at 1383-84]. While she "does not allege that Clark is solely responsible for the delay," she does not point to another specific delay, and "claims but for Clark delaying her request for reasonable accommodation because of her protected activity she would have been on telework." [*Id.*]. She points to an email from Lieutenant General James McConville who stated that "the process should not have taken 45 days." [*Id.* at 1384; DE 94-14 at 1438]. The

11

policy Phoenix points at to explain the length of the delay is the "Reasonable Accommodation Packet" from the Equal Employment Opportunity Office which states that reasonable accommodations should generally be processed "within 30 business days."[4]  [DE 94-1 at 1398]. If the accommodation request was not sent to the appropriate official, they will forward it "within 3 business days."  [*Id.*].

While Phoenix argues that Clark should have forwarded the accommodation request within three days, she does not attach any evidence that he was not the appropriate official.  [DE 94 at 1386].  Regardless of Clark's compliance with the forwarding policy, the accommodation request was approved by the terminal approving body on January 13, 2017.[5]  [DE 91-6 at 1248; DE 94 at 1383].  There are indeed forty-four days between November 30, 2016, and January 13, 2017.  But the accommodation packet attached by Phoenix states that accommodations should generally be proceeded within thirty "business days."  [DE 94-1 at 1398].  There are only thirty *business* days between November 30, 2016, and January 13, 2017.  Thus, Phoenix has not shown that there was a delay in the approval of her accommodation request under the policy she alleges Defendant should have followed, and the purported delay could not have been an adverse or retaliatory action. *See Kanungo v. Univ. of Kentucky*, 1 F. Supp. 3d 674, 683 (E.D. Ky. 2014) ("Kanungo has not demonstrated that the delay in processing, if it can be called that, was an adverse action.").

---

[4] Phoenix also points to the United States Army Human Resources Command Reasonable Accommodation Process, which states, "we want to expedite the processing of all reasonable accommodation requests within the command."  [DE 94-10 at 1428].  This policy has no specific day range.

[5] After approval by her supervisor, the request also had to be approved by a committee.  [DE 91-6 at 1248; DE 94 at 1383-85].  Defendant also notes that Phoenix did not have the technological capability to telework until this date.  [DE 91 at 1176].  Phoenix does not dispute this, and thus identifies no harm resulting from any purported delay.  The Court could dismiss the claim on this basis alone.  *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583–84 (6th Cir. 2012) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)) ("When a plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law.").

The Court also considers the purported disclosure of medical condition related to Phoenix's accommodation request. Phoenix alleges that Nikki Quijano ("Quijano"), Brittany Wisniewski ("Wisniewski"), and Celena Coleman ("Coleman") and discussed her medical condition. [DE 60 at 680-83]. Phoenix argues that the disclosure of her medical information to these employees, and their subsequent discussion of such, was an adverse employment action taken by the defendant in retaliation for her filing her Formal Complaint. [*Id.*; DE 94 at 1386-88].

To establish a prima facie case of retaliation, a plaintiff must prove "the defendant took an employment action adverse to the plaintiff." *Nguyen*, 229 F.3d at 563. "Retaliatory acts by an employer are not actionable unless they are "materially adverse" to a plaintiff's employment." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 470 (6th Cir. 2012). "An adverse employment action is an action by the employer that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). "Examples of materially adverse actions are a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 470 (6th Cir. 2012) (quotations omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not" rise to the level of an adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Phoenix argues that "Quiijano acknowledge [sic] that she possessed and read Phoenix's packet," "Burtonmiller's email also state, Quiijano [sic] had given the packet to Brittany . . . [and Burtonmiller testified] that she heard both Coleman and Wisniewski talk about Phoenix,

13

specifically, Phoenix's diagnosis and other personal healthcare information." [DE 94 at 1387]. The evidence Phoenix points to is Quijano's declaration, in which Quijano testified she helped Clark process Phoenix's request for accommodation but did not recall learning of the basis for the request. [DE 41-6 at 426-27]. Phoenix also points to an email from Burtonmiller dated December 16, 2016, that states, "[i]t was just given to Brittany, Nikki said Mr[.] Garcia will sign for Mr[.] Clark." [DE 94-15 at 1441]. And Phoenix alleges that Wisniewski said to Coleman about Phoenix's accommodation request, "she angry [sic] and she's crazy." [DE 94 at 1387]. To the extent that she is arguing Burtonmiller's knowledge of her accommodation request was retaliation, Phoenix testified in her deposition that she herself discussed the request with Burtonmiller. [DE 91-1 at 1210]. While her other allegations are vague and do not clearly allege or suggest that Phoenix's coworkers were discussing her medical information, the Court will liberally interpret her allegations as a pro se litigant and construe the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *Haines*, 404 U.S. 519; *Anderson*, 477 U.S. at 248; *Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016). Still, however, her fellow employees' discussion does not rise to the level of a materially adverse employment action because even if the employees knew of her medical condition and discussed it, the disclosure and subsequent discussion did not "constitute[] a significant change in employment status." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008); *see also Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68 ("Title VII, we have said, does not set forth a general civility code for the American workplace.") (quotation omitted). Nor, the Court notes, did Phoenix cite any case law to the Court suggesting that this was a materially adverse employment action. [*See* DE 94 at 1381-88]; *Viergutz*, 375 F. App'x at 485 (a party's "status as a pro se litigant does not alter [their] duty on a summary judgment motion.").

Thus, having failed to meet her burden of proving Defendant took an adverse employment action related to her purported delay in work accommodation and medical information disclosure, Phoenix has failed to prove a prima facie case of retaliation on this claim. *Nguyen*, 229 F.3d at 563. The court thus **GRANTS** Defendant's Motion for Summary Judgment [DE 91] on Phoenix's delay in work accommodation and disclosure of medical condition claim.

C.  Job Application Rejections

Finally, Phoenix has claimed that "she applied for over 28 positions that she was qualified, certified, and referred for and denied advancement." [DE 33 at 286; DE 52 at 563-65]. But she only alleges that three of those applications came after she engaged in protected conduct, and the Court considers this claim only as it relates to those three non-selections. [DE 20 at 224-27; DE 52 at 564; DE 60 at 684-87].

a.  *Prima Facie Case*

Defendant argues that Phoenix cannot prove a prima facie case because the selecting officials were unaware of her Formal Complaint, so it could not have been a contributing factor, and there could not have been a causal connection between filing the EEO Complaint and the rejection of her job applications. [DE 91 at 1184-90].

In the last set of briefing, on Phoenix's motion for summary judgment, the Court noted that Phoenix had refined her failure to promote allegations to three dates on which she applied for certain jobs and was not promoted: (1) July 22, 2016; (2) August 19, 2016; and (3) September 8, 2016. [DE 86 at 1138]. Defendant's motion for summary judgment addresses the job application rejection allegations for dates (2) and (3).[6]

---

[6] The Court has already addressed that Phoenix cannot claim retaliation for events that happened before her protected activity, but that Phoenix complied with the administrative exhaustion requirement for any alleged discriminatory act occurring June 18, 2016 or later. [DE 20 at 224-227; DE 60 at 684-87].

Defendant argues that the selecting individuals were unaware of Phoenix's EEO activity and Formal Complaint and that it cannot have been a contributing factor. [DE 91 at 1184-90]. In her response to Defendant's motion for summary judgment, Phoenix addresses only two specific dates that she applied for after she engaged in protected activity: August 15, 2016, and September 8, 2016. [DE 52-8 at 608; DE 94 at 1389-90]. Phoenix points to the temporal proximity between these non-selections and her Formal Complaint, which is "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."). Defendant points to declarations of the selecting individuals swearing they were unaware of Phoenix's EEO activity. [DE 91 at 1184-90]. However, the Court should liberally construe the plaintiff's complaint, consider whether those allegations are facially sufficient to establish a "causal connection," and "look only to the plaintiff's evidence to determine whether or not the plaintiff has established a prima facie case of retaliation." *Ballanger*, 238 F.3d 419; *Cline*, 206 F.3d at 664. Considering this, and that "[t]he burden of establishing a prima facie case is not an onerous one," the Court finds that there is sufficient evidence to allow for an inference of a causal connection between Phoenix filing her Formal Complaint and the rejection of her job applications. *Lewis-Smith*, 85 F. Supp. 3d at 906. Thus, Phoenix has proven a prima facie case of retaliation, and the Court will continue with the next step in the burden-shifting analysis.

16

b. *Legitimate, Nondiscriminatory Reason*

After the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate and non-retaliatory reason for terminating the plaintiff. *Rogers*, 897 F.3d at 772.

Defendant argues that the army had legitimate and substantial business reasons for not hiring Phoenix: she "was not the most qualified candidate." [DE 91 at 1189]. Defendant attached declarations from the selecting individuals that explain the independent screening process, that Phoenix was not the most qualified candidate for the panel they served on, and who the most qualified candidate was and why. [*See Id.*; DE 91-12; *and* DE 91-13].

Defendant has thus articulated a legitimate nondiscriminatory reason for rejecting Phoenix's job applications and refuted her prima facie case of retaliation. As the Court explained in its Orders on Summary Judgment, Defendant has met his burden at this step.

c. *Pretext*

As Defendant has provided a non-retaliatory reason for its actions, "the plaintiff must [now] prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Rogers*, 897 F.3d at 772. Defendant argues that Phoenix cannot prove pretext because its legitimate and substantial business reasons were not discriminatory or retaliatory, so it was free to choose among qualified candidates. [DE 91 at 1189].

"[E]mployers are generally 'free to choose among qualified candidates'" in making their employment decisions. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626 (6th Cir. 2006) (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)). "The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). Rather, a rejected applicant "must show that a reasonable

17

jury could conclude that the actual reasons offered by the defendant were a mere pretext . . ., not that other reasonable decision-makers might have retained the [rejected applicant]." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004) (affirming district court's grant of summary judgment to employer in age-discrimination case).

Although Phoenix does not make any arguments specifically about pretext, the Court liberally interprets her arguments as a *pro se* Plaintiff. She argues that she was a member of a protected class and was qualified for the positions she applied for, and the failure to promote occurred but for her protected activity. [DE 94 at 1389]. She argues that "Defendant hired under prohibited practices, as the 'HRC's appointment was done illegally.'" [*Id.* at 1390]. The only evidence Phoenix attaches on this claim is a "Union Grievance" in which "The Union believes that the appointment of Roger F. Deon . . . was done illegally for" a job announcement posted July 28, 2018. But this evidence is unrelated to any of her claims. Phoenix has presented no evidence that suggests Defendant's reasons amount to pretext. *See Hopkins v. Canton City Bd. of Educ.*, 477 F. App'x 349, 357 (6th Cir. 2012) ("she cannot show pretext because she presents no admissible evidence of her competitors' qualifications"). The court thus **GRANTS** Defendant's Motion for Summary Judgment [DE 91] on Phoenix's job application rejection claim.

## IV.    CONCLUSION

Accordingly, for the stated reasons, **IT IS ORDERED** that Defendant's Motion for

Summary Judgment [DE 91] is **GRANTED**.


Rebecca Grady Jennings, District Judge

United States District Court

February 9, 2023


Cc: Counsel of Record